643 S.E.2d 23 (2007)
In re C.T. and R.S. Minor Children.
No. COA06-923.
Court of Appeals of North Carolina.
April 3, 2007.
Forsyth County Department of Social Services, by John L. McGrath, Winston-Salem, for petitioner-appellee.
Womble Carlyle Sandridge & Rice, by Christopher G. Daniel, Winston-Salem, for petitioner-appellee Guardian ad Litem.
Janet K. Ledbetter, for respondent-appellant.
LEVINSON, Judge.
Respondent, who is the mother of minor children R.S. and C.T., appeals from an order terminating her parental rights in the children. We affirm the order of termination as to C.T. and vacate for lack of subject matter jurisdiction as to R.S.
The relevant facts are summarized as follows: R.S. was born in 1995, and C.T. in 2002. In March 2003 the children were placed in the custody of the petitioner, Forsyth County Department of Social Services (DSS). Thereafter, the children remained in DSS custody, except for a two month trial placement with respondent in early 2004. In September 2004 petitioner filed a petition to terminate respondent's parental rights, and a hearing on the petition was conducted in October 2005. On 18 November 2005 the trial court entered an order terminating respondent's parental rights in the minor children. Respondent appeals.
Respondent argues that the trial court lacked subject matter jurisdiction over the termination of parental rights proceeding concerning R.S., on the grounds that petitioner failed to issue a summons. The petition to terminate parental rights was captioned with the names of both R.S. and C.T., but the summons that was issued referenced only C.T. Petitioner concedes that there is no summons with respect to R.S. in the Record on Appeal, or in the clerk's file.
"Jurisdiction is the power of a court to decide a case on its merits; it is the power of a court to inquire into the facts, to apply the law, and to enter and enforce judgment." Jones v. Brinson, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953) (citations omitted). "`Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and failure to demur or object to the jurisdiction is immaterial.'" In re T.B., ___ N.C.App. ___, ___, 629 S.E.2d 895, 896 (2006) (quoting Stark v. Ratashara, ___ N.C.App. ___, ___, 628 S.E.2d 471, 473, disc. review denied, sub nom Stark v. Ratashara, 360 N.C. 636, 633 S.E.2d 826 (2006)) (citations omitted). A court's general jurisdiction over a given type of proceeding is conferred by the North Carolina Constitution or the North Carolina General Assembly. In this regard, N.C. Const. art. IV, § 12 provides in part that:
(1) The Supreme Court shall have jurisdiction to review upon appeal any decision of the courts below, upon any matter of law or legal inference. . . .
(2) The Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe.
(3) Except as otherwise provided by the General Assembly, the Superior Court shall have original general jurisdiction throughout the State. . . .
(4) The General Assembly shall . . . prescribe the jurisdiction and powers of the District Courts and Magistrates.
The General Assembly has directed that the district court "shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile[.]" N.C. Gen. Stat. § 7B-1101 (2005). "This statute confers upon the court general jurisdiction over termination of parental rights proceedings." In re T.B., ___ N.C.App. ___, ___, 629 S.E.2d 895, 897 (2006) (citations omitted).
However, "`a trial court's general jurisdiction over the type of proceeding or *25 over the parties does not confer jurisdiction over the specific action.' `Thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.'" In re A.B.D., 173 N.C.App. 77, 86-87, 617 S.E.2d 707, 714 (2005) (quoting In re McKinney, 158 N.C.App. 441, 447, 581 S.E.2d 793, 797 (2003), and In re Transp. of Juveniles, 102 N.C.App. 806, 808, 403 S.E.2d 557, 558-59 (1991)) (citation omitted).
Issuance of a summons in a termination of parental rights case is addressed in N.C. Gen.Stat. § 7B-1106 (2005), which provides in relevant part that:
(a) Except as provided in G.S. 7B-1105, upon the filing of the petition, the court shall cause a summons to be issued. The summons shall be directed to the following persons . . . who shall be named as respondents: (1) The parents of the juvenile[.]
This Court has held that failure to issue a summons deprives the trial court of subject matter jurisdiction. In re Mitchell, 126 N.C.App. 432, 433, 485 S.E.2d 623, 623 (1997) ("The dispositive issue on appeal is whether the court acquired jurisdiction of the subject matter of this juvenile action and the persons of the respondents without the proper issuance of summons. We hold that it did not."). And, in In re A.B.D., supra, this Court held that the trial court had no subject matter jurisdiction over a proceeding for termination of parental rights where the summons was not timely served. In the instant case, the record fails to show that a summons was ever issued as to R.S. See Conner Bros. Mach. Co. v. Rogers, ___ N.C.App. ___, ___, 629 S.E.2d 344, 345 (2006) ("Because no summons was issued, . . . the trial court . . . did not have subject matter jurisdiction.").
The appellees argue that respondent waived the issue of jurisdiction by participating in the hearing and failing to object to the service of process. In support of their position, appellees cite cases addressing a party's waiver of personal jurisdiction. Appellees accurately state that the issue of personal jurisdiction is subject to waiver. See N.C. Gen.Stat. § 1A-1, Rule 12(h)(1) (2005) ("defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion . . . nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."). The issue in the instant case, however, concerns subject matter jurisdiction. We observe, too, that appellees have not articulated any argument addressing the fact that the summons in the instant case did not mention or reference R.S. Nor have they cited any case holding that subject matter jurisdiction existed where a statutorily required summons was not issued regarding a proceeding concerning a juvenile, a situation different from that presented by technical defects in service of a summons.
Despite petitioner's failure to issue a summons pertaining to R.S., adequacy of notice has not been an issue in this case and respondent does not allege any confusion or misunderstanding about the fact that this was a proceeding to terminate her parental rights in both children. We are nonetheless constrained to conclude that the trial court lacked subject matter jurisdiction to terminate the respondent's parental rights in R.S. Accordingly, we vacate the order on termination to the extent it terminates the parental rights of respondent in R.S.
We next address respondent's argument that the order must be reversed because it was entered approximately thirteen (13) months after the petition to terminate parental rights was filed. Respondent argues that she and C.T. were prejudiced by this delay. We disagree.
This Court has held that the failure of the trial courts to enter a termination order within the time standards in N.C. Gen.Stat. § 7B-1109(e)(2005) constitutes reversible error where the appellant demonstrates prejudice as a result of the delay. See, e.g., In re P.L.P., 173 N.C.App. 1, 618 S.E.2d 241 (2005), aff'd, 360 N.C. 360, 625 S.E.2d 779 (2006).
In the instant case, the issue is the prejudicial effect of delay prior to the hearing, rather than delay in entering the order after the hearing. In the absence of "good cause" or "extraordinary circumstances," the termination hearing shall be held within ninety (90) days after the petition or motion to *26 terminate is filed. N.C. Gen.Stat. § 7B-1109(a)(2005). The petition in this case was filed 20 September 2004, so the hearing should have been held by 20 December 2004. Instead, the hearing commenced 24 October 2005.
This Court has extended the reasoning regarding failure to enter a timely order to the failure to hold the termination hearing within the time period set forth in G.S. § 7B-1109(a). In re S.W., 175 N.C.App. 719, 722, 625 S.E.2d 594, 596, disc. review denied, 360 N.C. 534, 635 S.E.2d 59 (2006). Respondent argues that the trial court's delay prejudiced her and C.T. in that it "left [them] in emotional and legal limbo." In addition, respondent contends that she was denied a "timely right to appeal" and was denied an "immediate, final decision." However, respondent does not support her arguments concerning prejudice with any greater detail or support beyond these statements.
Petitioner argues that, rather than prejudicing respondent, the delay between the filing of the petition and the hearing benefitted her by giving her more time to address housing, employment, individual counseling, and substance abuse issues. Petitioner observes that respondent did not make any greater progress on these issues during the delay. Petitioner also points out that, judging from the trial court's findings of fact, the children continued to do well in foster care and were not prejudiced by the delay.
We conclude that respondent has failed to meet her burden to show prejudice caused by the delay in scheduling the hearing. At the time the petition was filed, petitioner had not demonstrated any real progress in changing the underlying circumstances and conditions that led to the children's removal from her home. Consequently, an immediate resolution would not have been in her favor, while the delay inured to her benefit. Secondly, the record shows that respondent sought more time when this matter came on for hearing 24 October 2005. We agree with appellees that, on these facts, the delay was not prejudicial, such that the order on termination must be reversed.
Respondent nonetheless argues that, given this Court's holding in In re D.M.M., ___ N.C.App. ___, 633 S.E.2d 715 (2006), "it should be readily apparent that reversal is warranted[.]" However, the instant case differs significantly from D.M.M. in that (1) the delay in D.M.M. consisted of violations of Section 7B-1109(a)(90 days to hold hearing) and N.C. Gen.Stat. § 7B-1110(a)(2005)(30 days to enter order), resulting in a nineteen (19) month delay between the filing of the petition and the entry of an order; and (2) the termination order in the instant case was entered within thirty (30) days following the hearing, whereas in D.M.M. the order was delayed seven (7) months.
The relevant assignments of error are overruled.
We next address respondent's argument that certain findings of fact are not supported by sufficient evidence, and that the findings do not support the court's conclusions of law. The trial court made sixty-one findings of fact in its order for termination of parental rights. We find it unnecessary to recite all of these verbatim, but note that the court's findings tended to show the following:
1. In March 2003 C.T. and R.S. were placed in DSS custody, after DSS became concerned about respondent's substance abuse, inappropriate supervision, and the children's presence in an environment injurious to their welfare. They were later adjudicated dependent.
2. After her children were adjudicated dependent, respondent got a substance abuse assessment, a psychological evaluation, and a parenting ability assessment, but did not follow the recommendations of those who administered these assessments.
3. Respondent failed to stop her substance abuse after the children were removed from the home. She attended several substance abuse programs, but positive drug screen results were documented at intervals, including within the six months prior to the hearing.

*27 4. Respondent lived with her mother for most of the year prior to the hearing, paying nothing for rent, power, water, or food. She did not provide an independent stable residence, establish a budget, or develop a plan of care for the children.
5. The children were in a trial placement with the mother from 01/30/04 to 03/31/04. During the trial placement, respondent failed to meet her children's basic needs. C.T.'s day care providers reported that the child was hungry, filthy, and had dried feces in her diaper. Respondent was also inattentive to C.T.'s medical needs related to the child's asthma. She lost C.T.'s inhaler, delayed getting a replacement, and smoked inside her house.
6. During the trial placement, respondent did not keep her house in a safe condition for small children, and did not buy a fire extinguisher for the house.
7. After the trial placement, DSS continued to work with respondent. When she still did not address the issues that brought the children into the custody of DSS, the plan changed from reunification with the parents to adoption.
8. Respondent failed to keep a steady job. She states that she worked as a housekeeper several months before the hearing, but did not provide verification of this employment. Nor has she applied for other employment. Respondent decided not to obtain her GED, and has chosen not to work.
9. Respondent has used inappropriate discipline, including excessive corporal punishment.
10. Respondent repeatedly expressed hostility towards DSS employees, and has not complied with DSS recommendations for, e.g., individual counseling, budget planning, and substance abuse treatment.
11. Respondent has willfully refused to provide a stable living arrangement for the children or to meet their needs.
12. Regarding grounds listed in 7B-1111(a)(1) and 7B-111(a)(2), the trial court relied heavily on the testimony of Dr. Chris Sheaffer, that respondent considers herself to be a good parent, denies having substance abuse problems, and denies that children had no problems. The trial court also considered Dr. Sheaffer's opinion that respondent lacked the ability to adequately supervise the children and to protect the children.
13. In addressing whether there is a possibility of continued neglect, the trial court considered the fact that respondent perceives no problem or need to change herself. Respondent's behavior shows neglect at the time of the hearing and a strong probability of the repetition of neglect.
14. Respondent has not made a genuine, consistent, or persistent effort to address the issues that caused the children to be placed in DSS's custody.
"On appeal, our standard of review for the termination of parental rights is whether the court's findings of fact are supported by clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re Baker, 158, 491, 493, 158 N.C.App. 491, 581 S.E.2d 144, 146 (2003). "The trial court's `conclusions of law are reviewable de novo on appeal.'" In re D.H., ___ N.C.App. ___, ___, 629 S.E.2d 920, 922 (2006)(quoting Starco, Inc. v. AMG Bonding and Ins. Svcs., 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996)). If one ground for termination is sustained, we need not address the remaining grounds found by the trial court. In re Stewart Children, 82 N.C.App. 651, 655, 347 S.E.2d 495, 498 (1986).
The court may terminate parental rights when a parent neglects a child within the meaning of N.C. Gen.Stat. § 7B-101(15). N.C. Gen.Stat. § 7B-1111(a)(1)(2005). G.S. § 7B-101(15), in turn, defines a "neglected juvenile" as "[a] juvenile" who does not receive proper care, supervision, or discipline from the juvenile's parent[.] "[T]his Court has consistently required that there be some physical, mental, or emotional impairment of *28 the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotation marks omitted). And the neglect must be "based on evidence showing neglect at the time of the termination hearing." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). Where the child has not been in the care of the parent, the court must consider the probability that the child would be neglected should the child be returned to the parent's care. In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984).
After reviewing the record, we conclude the trial court's findings of fact are supported by sufficient evidence in the record, and that its findings of fact support its conclusion of law that respondent neglected C.T. The relevant assignments of error are overruled.
Affirmed in part, vacated in part.
Judges McCULLOUGH and BRYANT concur.